United States District Court
Southern District of Texas
**ENTERED**
October 01, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **RICO MACIAS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:22-CV-00043 |
| | § | |
| **HALIE WATKINS,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

During the early morning hours of October 7, 2020, Defendant Officer Halie Watkins responded to two separate 911 calls, both of which were received from individuals at a duplex located at 3302 E. Red River in Victoria, Texas. Officer Watkins was aware that there may have been a burglar at the duplex, and that someone may have a gun. When Officer Watkins arrived at the scene, she approached the duplex from behind without announcing her presence. As she got closer to the front of the duplex, Plaintiff Rico Macias turned from where he stood on the porch of the duplex and pointed his flashlight in Officer Watkins's direction. Officer Watkins immediately fired three rounds in Macias's direction, which missed him and lodged into the side of the duplex. Officer Watkins then fled the scene.

Macias now brings suit against Officer Watkins under 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights. Pending before the Court is Defendant Halie Watkins' Motion for Summary Judgment on Qualified Immunity. (Dkt. No. 17). After

reviewing the Motion, Response, Reply, record, and applicable law, the Court **GRANTS** the Motion.

**I.   BACKGROUND**[1]

At around 3 a.m. on October 7, 2020, Macias and his girlfriend Rosalia Flores woke to the sound of their dog barking. (Dkt. No. 22 at 14). Macias cracked open the front door of his duplex and saw a man standing outside. (*Id.*). Macias went back inside to grab a flashlight,[2] and upon his return he asked the man who he was and why he was there. (*Id.*). The man, who would later be identified as Nick Salazar, claimed his brother lived in the adjacent apartment and he was there to get some tools. (*Id.* at 14–15). Salazar was accompanied by a woman who stood near the porch. (Dkt. No. 17 at 3); (Dkt. No. 22 at 15); (Dkt. No. 18, Ex. 2).

Macias, concerned that Salazar and the woman were attempting to break into his neighbor's apartment, instructed Flores to call the police. (Dkt. No. 17 at 3); (Dkt. No. 22 at 15). Flores called the police, reporting a potential burglary at their neighbor's apartment. (Dkt. No. 18, Ex. 2). The 911 dispatcher asked whether there were any weapons, to which Flores responded, "there is nobody out here with a gun." (*Id.* at 01:27–01:32). The 911 dispatcher instructed Flores and Macias to stay inside their home, and

---

[1]   Except where noted, this section contains only undisputed facts which have been construed in the favor of the nonmovant, Macias. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).

[2]   The Parties dispute whether the object Macias was holding was a regular flashlight or a pistol with a gun mounted flashlight. (Dkt. No. 17 at 4); (Dkt. No. 18, Ex. 6); (Dkt. No. 22 at 10–11). The record indicates that it was a flashlight with a pistol-type grip. (Dkt. No. 18, Ex. 6, Photograph No. 29); *see, e.g.*, https://images.app.goo.gl/qrp3TLmS1sxNFhyZ6.

2

that an officer from the police department would be at their residence shortly. (*Id.* at 03:25–03:32).

At around the same time, Salazar also called the police. (Dkt. No. 18, Ex. 2). Salazar informed the 911 dispatcher that he was at his brother's house, and the neighbor was out there with a gun because he thought Salazar was breaking into the apartment. (*Id.* at 00:11–00:20, 00:36–00:45, 01:12–01:18). The 911 dispatcher asked Salazar if he wanted the police department to send out an officer, to which Salazar responded, "if you want to send some police, yeah go ahead, he has a gun." (*Id.* at 00:56–01:02). The 911 dispatcher informed Salazar that an officer would be there shortly. (*Id.* at 02:20–02:25).

The Victoria Police Department dispatcher assigned the two calls to Defendant Officer Halie Watkins. (Dkt. No. 17 at 3); (Dkt. No. 22 at 15). As Officer Watkins made her way to the scene, she was warned over the police radio that one of the individuals may have a gun, and she was also aware of the potential burglary report lodged by Flores. (Dkt. No. 17 at 3–4); (Dkt. No. 18, Ex. 3); (Dkt. No. 22 at 15). When Officer Watkins arrived at the scene, she slowly approached the duplex from the back. (Dkt. No. 18, Ex. 1 at 00:04–00:10). As she neared the front of the duplex, Officer Watkins did not announce herself. (*Id.*). Instead, she called out to the woman accompanying Salazar, and asked: "hey ma'am, does he have a gun?" (*Id.* at 00:10–00:12). Not responding to Officer Watkins's question, the woman turned to Salazar and said, "come on Nick, the cops are right there." (*Id.* at 00:13–00:15). The last few seconds of Officer Watkins's body camera footage pass in a blurred frenzy. Macias, who stood on the porch, turned to face Officer Watkins. (*Id.* at 00:17–00:18). Officer Watkins shouted "hey" two times and then said "let me see your"

before Macias quickly raised his flashlight directly at her. (*Id.*). Officer Watkins immediately fired three shots at Macias and then fell to the ground. (*Id.* at 00:18–00:20). Each of the bullets missed Macias and lodged into the side of the duplex. (Dkt. No. 22 at 17). Officer Watkins then retreated to her vehicle and fled the scene. (Dkt. No. 17 at 4); (Dkt. No. 22 at 17). Macias, who had also fallen to the ground, slowly got up with his hands in the air and walked into his apartment. (Dkt. No. 22 at 18).

Macias now brings suit under 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights. (*See* Dkt. No. 1). Officer Watkins moves for summary judgment asserting that she is entitled to qualified immunity. (Dkt. No. 17).

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (internal quotation marks and citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the

4

nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). The nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075). But the district court must view the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

## III. DISCUSSION[3]

Macias has sued under 42 U.S.C. § 1983 claiming that Officer Watkins violated his Fourth Amendment rights when she illegally seized him and used deadly force against him. (*See generally* Dkt. No. 1). Officer Watkins contends that she is entitled to qualified immunity. (Dkt. No. 17 at 7–14). Qualified immunity protects government officials from civil liability to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The doctrine provides government officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Davidson v. City of Stafford,* 848 F.3d 384, 391 (5th Cir. 2017) (cleaned up). To overcome this defense, a plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the

---

[3] Both Parties raise minor evidentiary objections to the summary judgment record. Macias claims that Officer Watkins "generally cites to evidence in the record and fails to specifically pinpoint what portion of the record she is offering in support of her argument." (Dkt. No. 22 at 6). Macias urges that this Court is under no obligation to consider evidence not specifically cited. (*Id.*). The Court agrees that many of Officer Watkins' citations to the record are vague. For example, for the proposition that Macias had a pistol with a mounted flashlight, Officer Watkins vaguely cites to Defendant's Exhibit 6. (Dkt. No. 17 at 4). Defendant's Exhibit 6 is a 63-page police report and 292 individual photographs. (Dkt. No. 18, Ex. 6). Notwithstanding, the Court overrules Macias's objection to the summary judgment evidence.

Officer Watkins objects to Macias's use of Officer Sterling Kocian's comments about the body camera footage. (Dkt. No. 24 at 1). Officer Watkins claims that the best evidence of what occurred is the video itself. (*Id.*). While the Court agrees that the best evidence of what occurred is the body camera footage, the Court may consider all the evidence in the record. *See United States v. Torres*, 114 F.3d 520, 525–26 (5th Cir. 1997). Therefore, the Court overrules Officer Watkins's objection.

time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011).

Officer Watkins argues that she is entitled to qualified immunity because she used objectively reasonable force, and a reasonable officer could have believed that her conduct was lawful under the circumstances. (Dkt. No. 17 at 7). Officer Watkins alleges that she arrived at the scene with three key beliefs about the situation: (1) that a potential burglary was in progress or had occurred, (2) someone had threatened another with a deadly weapon, and (3) someone had a gun. (*Id.* at 9). Officer Watkins contends that when she arrived at the scene, she unsuccessfully tried to determine if anyone had a gun.[4] (*Id.* at 10). She claims that as she approached the front of the duplex, Macias quickly turned towards her and swiftly raised what she perceived to be a pistol with a gun mounted flashlight directly at her. (*Id.* at 9). Further, Officer Watkins states that she feared for her life. (*Id.*). By Officer Watkins's estimation, her beliefs taken together prove that her use of force was reasonable, (*id.* at 7–10), and that she did not violate any clearly established law because a reasonable officer would have believed it was lawful to use such force given the circumstances, (*id.* at 11). She asserts that Fifth Circuit law supports her position because the use of force is based upon what the officer perceives—even if those perceptions turn out to be incorrect. (*Id.* at 11–14).

---

[4] Officer Watkins claims that as she approached the duplex, she heard yelling and shouting. (Dkt. No. 17 at 9). Macias disputes that yelling and shouting could be heard. (Dkt. No. 22 at 9). It is unclear from the body camera footage and audio whether anyone is yelling or shouting before Officer Watkins speaks to the woman near the porch. (*See* Dkt. No. 18, Ex. 1). While the Court construes this disputed fact in favor of Macias, *Scott*, 550 U.S. at 380, 127 S.Ct. at 1776, it has no bearing on the resolution of any legal questions in this case.

7

In his Response, Macias maintains that his Fourth Amendment rights were violated, and he argues that Officer Watkins is not entitled to qualified immunity. (*See* Dkt. No. 22 at 21–33). First, Macias argues that Officer Watkins unreasonably seized him when she shot at him, forcing him to submit to her show of authority. (*Id.* at 21–24). He argues that his seizure was unreasonable because Macias had not committed a crime, nor did he present any threat of harm to anyone, including Officer Watkins. (*Id.* at 24). Second, Macias argues that Officer Watkins unreasonably used deadly force against him because he was not under arrest or evading arrest, he was not the suspect of any crime, he did not pose a threat to anyone, and he was unarmed. (*Id.* at 25–26). Third, Macias argues that Officer Watkins is not entitled to qualified immunity because clearly established law put Officer Watkins on notice that her conduct violated Macias's Fourth Amendment rights. (*Id.* at 28–33).

In her Reply, Officer Watkins asserts that the facts taken together show that she acted reasonably. (Dkt. No. 24 at 7–13). Officer Watkins claims that she arrived at the scene with the belief that a burglary was occurring or had occurred and that someone had a gun. (*Id.* at 3–4, 8). As she approached the duplex, Macias quickly turned in her direction and raised his arm pointing an object in her direction that Officer Watkins perceived to be a pistol with a gun mounted flashlight. (*Id.* at 5–7, 9).

In determining whether Officer Watkins is entitled to qualified immunity, the Court will first consider whether Officer Watkins violated Macias's Fourth Amendment rights, and then consider whether that right was clearly established at the time of the violation.

### A.   FOURTH AMENDMENT VIOLATION

Macias claims that his Fourth Amendment rights were violated in two ways.  First, Macias challenges the seizure itself—that Officer Watkins seized him without probable cause.  (Dkt. No. 22 at 21–24).  Second, Macias challenges the way he was seized—that Officer Watkins unreasonably used deadly force against him.  (*Id.* at 24–27).

#### 1.   **Unlawful Seizure**

The Fourth Amendment confers the right to be free from unreasonable searches and seizures.  U.S. Const. amend. IV.  For Macias to prevail on his claim for an unlawful seizure, he must show (1) that he was seized, and (2) that the seizure was unreasonable.  *See D.C. v. Wesby*, 583 U.S. 48, 56–57, 138 S.Ct. 577, 586–587, 199 L.Ed.2d 453 (2018).

##### a.   Whether Macias Was Seized

Under the Fourth Amendment, a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 1879 n.16, 20 L.Ed.2d 889 (1968)).  "A seizure occurs 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave.'"  *Id.* (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988)) (alterations in original).  It is well-established that voluntary submission to a show of authority can constitute a seizure for Fourth Amendment purposes.  *Id.* (collecting cases).

Here, Macias alleges that Officer Watkins terminated his freedom of movement when she fired her gun at Macias.  (Dkt. No. 22 at 23).  He asserts that any reasonable

9

person in this situation would not have felt free to leave or terminate the encounter. (*Id.*). Macias claims that he dropped to the ground in response to the shooting and submitted to Officer Watkins's show of authority. (*Id.*). The Court agrees with Macias. Law enforcement shootings are covered by the Fourth Amendment because "there can be no question that apprehension by the use of deadly force is a seizure[.]" *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). Therefore, Macias was seized by Officer Watkins.

                b.        <u>Whether the Seizure Was Unreasonable</u>

The Court must next determine whether the seizure was unreasonable and thus a constitutional violation. *See Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures."). Generally, a seizure is unreasonable, and therefore a violation of the Fourth Amendment, when it is done without probable cause. *See United States v. Kye Soo Lee*, 898 F.2d 1034, 1039 (5th Cir. 1990). "Probable cause is the sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers." *McLin*, 866 F.3d at 694 (cleaned up).

Here, Macias alleges that Officer Watkins lacked probable cause because he had not committed a crime, he was not in the process of committing a crime, and he did not present a threat of serious harm to anyone, including Officer Watkins. (Dkt. No. 22 at 24). After reviewing the record, the Court finds that Officer Watkins had probable cause to seize Macias.

First, Officer Watkins claims that she arrived on the scene with the belief that a burglary and/or an aggravated assault might have occurred or was in progress. (Dkt. No. 17 at 9). The basis for Officer Watkins's belief is supported by the summary judgment evidence. (Dkt. No. 18, Ex. 2 (911 calls)); (Dkt. No. 18, Ex. 3 (police radio frequencies)). The fact that Macias did not commit a crime does not negate a finding of probable cause. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *See Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (per curiam) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 2335, 76 L.Ed.2d 527 (1983)). Therefore, evidence that an individual was innocent does not necessarily lead to the conclusion that the officer lacked probable cause for the seizure. *Id.*

Second, Officer Watkins claims she arrived on the scene with the belief that someone had threatened another with a deadly weapon and that someone had a gun. (Dkt. No. 17 at 9). Officer Watkins claims, and her body camera footage confirms, that as she approached the front of the duplex, Macias quickly turned towards her and raised his arm and pointed an object in her direction. (*Id.*); (Dkt. No. 18, Ex. 1 at 00:10–00:18). The uncontroverted summary judgment evidence indicates that Macias pointed a flashlight, which had a pistol-type grip. (Dkt. No. 18, Ex. 6, Photograph No. 29). These facts support the conclusion that Officer Watkins had probable cause because she believed that Macias posed a danger to her life. The Court finds that the facts and circumstances taken together show that Officer Watkins had probable cause to seize

Macias. Therefore, while Macias was seized, that seizure was reasonable and lawful because it was supported by probable cause.

### 2. Use of Deadly Force

The Court now turns to the constitutionality of Officer Watkins's use of deadly force. The Fourth Amendment confers the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. In addition to when it is unsupported by probable cause, a seizure can also be unreasonable if it involves excessive force. *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). To prevail on an excessive-force claim under the Fourth Amendment, a plaintiff must show that he suffered (1) an injury that (2) resulted directly and only from an officer's use of force that was "clearly excessive" and (3) "objectively unreasonable." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022).

The Supreme Court has outlined the following considerations that inform the need for force in the Fourth Amendment context: (1) the severity of the crime committed; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. This is an objective analysis, determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry*, 392 U.S. at 20–22, 88 S.Ct. 1879–1881). Excessive force claims are "evaluated for objective reasonableness based on the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207, 121 S.Ct. 2151, 2159, 150 L.Ed.2d 272 (2001). This calculus must include "allowance

for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1872; *see also Plumhoff v. Rickard*, 572 U.S. 765, 775, 134 S.Ct. 2012, 2020, 188 L.Ed.2d 1056 (2014).

Here, the Court finds that Officer Watkins's use of deadly force was not unreasonable. In reaching this conclusion, the Court focuses on the first two *Graham* factors, because it is undisputed that the third factor—whether the suspect was actively resisting arrest or attempting to evade arrest by flight—is inapplicable to this case. Turning to the first *Graham* factor—the severity of the crime—the Court recognizes that Macias had not committed crime, nor was he in the process of committing a crime when Officer Watkins arrived at the scene. However, this inquiry is considered from a reasonable officer's perspective and based on the information the officer had at the time. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. Officer Watkins arrived at the scene with the belief that a burglary had occurred or was in progress, that someone had threatened another with a deadly weapon, and that someone had a gun. (Dkt. No. 17 at 9); (Dkt. No. 18, Ex. 2 (911 calls)); (Dkt. No. 18, Ex. 3 (police radio frequencies)). Given this information, a reasonable officer could conclude that they were reporting to a dangerous scene that may require the use of a deadly force. The Court finds that the first *Graham* factors weighs in favor of Officer Watkins.

"[T]he second [*Graham*] factor—whether there is an immediate threat to safety—is generally the most important factor in determining the objective reasonableness of an officer's use of deadly force." *Baker v. Coburn*, 68 F.4th 240, 247–48 (5th Cir. 2023). It is

13

well-established that officers are justified in using deadly force whenever they reasonably fear serious bodily harm. *See e.g., Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) ("An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others."). Again, this inquiry is judged from the perspective of a reasonable officer. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. Here, Officer Watkins arrived at the scene with the belief that someone had a gun. (Dkt. No. 17 at 9). When she approached the front of the duplex, Macias quickly turned towards her and raised his arm pointing a flashlight directly at Officer Watkins. (Dkt. No. 18, Ex. 1 at 00:10–00:18). The uncontroverted summary judgment evidence indicates that Macias's flashlight had a pistol-type grip. (Dkt. No. 18, Ex. 6, Photograph No. 29). Taking the facts and circumstances together, a reasonable officer could believe that Macias posed a serious threat to the officer's life. The Court finds that the second *Graham* factor also weighs in favor of Officer Watkins. Therefore, while Officer Watkins used deadly force against Macias, that force was not unreasonable given the facts and circumstances.

### B.   CLEARLY ESTABLISHED RIGHT

Having found that Officer Watkins did not violate Macias's Fourth Amendment rights, the Court need not address whether Officer Watkins is entitled to qualified immunity. However, lest there be any doubt of whether a Fourth Amendment violation occurred, the Court holds that the Fourth Amendment rights at issue in this case were not clearly established at the time of this incident.

"The 'clearly established' prong is difficult to satisfy." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). "A right is 'clearly established' only if it 'is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015)). To satisfy this demanding inquiry, the plaintiff must identify precedent that "squarely govern[s] the specific facts at issue[.]" *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020) (cleaned up). "In other words, controlling authority or a robust consensus of persuasive authority must have placed the question beyond debate, with the right's contours sufficiently definite that any reasonable official in the officer's shoes would have understood that he was violating it." *Baker,* 68 F.4th at 245–46 (cleaned up).

Here, Macias points to *Amador v. Vasquez*, 961 F.3d 721 (5th Cir. 2020), as the precedent that governs the clearly established law in this case. (Dkt. No. 22 at 28). In *Amador*, the Fifth Circuit held that "[e]very reasonable officer would have understood that using deadly force on a man holding a knife, but standing nearly thirty feet from the deputies, motionless, and with his hands in the air for several seconds, would violate the Fourth Amendment." *Amador*, 961 F.3d at 730. Macias argues that he was "in even more of a non-threatening position" than the individual shot by officers in *Amador*, and therefore Officer Watkins was on notice that her actions violated the Fourth Amendment. (Dkt. No. 22 at 29). The Court disagrees. *Amador* is clearly distinguishable from the facts of this case. Most notably, the individual shot by officers in *Amador* had a knife, 961 F.3d

15

at 730, whereas Officer Watkins suspected Macias had a gun and reasonably believed that he had pointed the gun at her, (Dkt. No. 17 at 1–2).

In fact, the Fifth Circuit's jurisprudence on this issue indicates quite the opposite — the clearly established law is that there is no right to be free from the use of deadly force when an individual attempts to use or reach for a weapon. *Blanchard-Daigle v. Geers*, 802 F.App'x 113, 120 (5th Cir. 2020) (per curiam) ("[The Fifth Circuit] has repeatedly held that an officer's use of deadly force is reasonable when an officer reasonably believes that a suspect was attempting to use or reach for a weapon." (quoting *Valderas v. City of Lubbock*, 937 F.3d 384, 390 (5th Cir. 2019))); *see also Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (collecting cases). This is so even when an officer mistakenly believes that an individual was attempting to use or reach for a weapon. *See Blanchard-Daigle*, 802 F.App'x at 120; *see also Vitello v. Crawford*, No. 4:04-CV-03251, 2009 WL 890559, at *11 (S.D. Tex. Mar. 30, 2009) ("Police officers who reasonably but mistakenly conclude that deadly force is needed to protect themselves and their fellow officers are entitled to qualified immunity for using that force." (citing *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991))). Although mistaken, Officer Watkins's belief that Macias was armed and attempting to use his weapon was reasonable. Therefore, Officer Watkins's decision to use deadly force did not violate clearly established law.

## IV. CONCLUSION

Considering the foregoing analysis, the Court **GRANTS** Defendant Halie Watkins' Motion for Summary Judgment on Qualified Immunity. (Dkt. No. 17). Plaintiff Rico Macias's Section 1983 claim is **DISMISSED WITH PREJUDICE**.

It is SO ORDERED.

Signed on September 30, 2023.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**